**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JAMES PLONSKER,        ) | |
| ) | |
| Plaintiff,    ) | Case No. 08 C 3305 |
| ) | (Removal from Cook County Circuit |
| v.    ) | Court, Case No. 08 CH 18254) |
| ) | |
| NATIONAL ASSET RECOVERY    ) | Judge Joan Humphrey Lefkow |
| SERVICES, INC    ) | |
| ) | |
| Defendant.    ) | |
| ) | |

**DEFENDANT'S MOTION FOR REASSIGNMENT**
**<u>BASED UPON RELATEDNESS</u>**

Defendant, National Asset Recovery Services, Inc. ("NARS"), by its undersigned counsel from the law firm of Scopelitis, Garvin, Light, Hanson & Feary, for its Motion for Reassignment Based upon Relatedness, states as follows:

1.    On May 19, 2008, Plaintiff, James Plonsker filed a complaint against Defendant, NARS, in the Circuit Court of Cook County, Illinois, County Department, Chancery Division.  ("First Case").  In Plaintiff's First Case, he alleged that NARS breached Plaintiff's Employment Agreement when NARS failed to pay Plaintiff certain commissions.  A copy of the First Case is attached as Exhibit A.

2.    Defendant subsequently removed the First Case to the Northern District of Illinois, Eastern Division, based upon diversity jurisdiction, and it is presently pending before this Court.

3.      On June 9, 2008, Plaintiff filed a second complaint in the Circuit Court of Cook County, Illinois, County Department, Law Division, against NARS and Greg Cappa, an officer of NARS. (the "Second Case").  A copy of the Second Case is attached as Exhibit B.

4.      On July 17, 2008, Defendant removed the Second Case to the Northern District of Illinois, Eastern Division, based upon diversity jurisdiction, and the Second Case has been assigned to the Honorable Judge Marvin E. Aspen.

5.      In this Second Case, Plaintiff alleged four (4) Counts.  In Count I (conversion), Plaintiff alleges that Defendants intentionally converted assets belonging to Plaintiff by willfully denying Plaintiff earned but not yet due commissions.  In Count II (fraud in the inducement), Plaintiff alleges that Defendants fraudulently induced Plaintiff into entering an Employment Agreement with Defendant NARS while knowingly never intending to be bound by the Employment Agreement and never intending to make commission payments thereunder.  In Count III (breach of contract), Plaintiff alleges that Defendants breached the commission payment provisions contained in the Employment Agreement entered into between Defendant NARS and Plaintiff.  In Count IV (accounting), Plaintiff seeks an accounting for all sums due and owing as might be determined from a review of the books and records of Defendant NARS.

6.     Pursuant to Local Rule 40.4 of the Rules of the United States District Court for the Northern District of Illinois ("Local Rules"), the Second Case should be reassigned to this Court as it is related to the First Case.

7.     The two cases are related as defined by Local Rule 40.4 (a)(2) and (3).   The allegations in the Second Case involve the same issues of fact. Although Plaintiff names four (4) new causes of action in the Second Case, all four (4) of these counts are related to Defendant NARS' failure to pay commissions which is the heart of the allegations of the First Case.  Both cases also grow out of the same transaction, i.e. Plaintiff's employment with NARS, the Employment Agreement and the work Plaintiff allegedly performed to earn the commission.

8.     The conditions for reassignment under Local Rule 40.4 (b) are also met.  Both cases are now pending before the Northern District of Illinois, Eastern Division.  Given that both cases involve the same parties, the same facts and essentially the same claims, assigning these cases to the same judge will result in a substantial savings of judicial time.  Moreover, it is clear that both cases will likely involve the same discovery and will require the same depositions.

9.     In the First Case, the pleadings were just finalized with Plaintiff filing his Response to NARS' Answer on July 17, 2008.  As such, the First Case has not progressed to the point where a finding of relatedness will substantially delay the proceedings.  As the resolution of both cases will turn on the interpretation of the Employment Agreement and a finding with respect to

whether commissions were earned, the First Case and the Second Case are also susceptible to disposition in a single proceeding.

WHEREFORE, Defendant, National Asset Recovery Services, Inc., respectfully requests this Court find that the First Case and Second Case are related and that the Second Case be reassigned to Honorable Judge Joan Humphrey Lefkow.

Dated: July 18, 2008

Respectfully submitted,

**NATIONAL ASSET RECOVERY SERVICES, INC.**

/s/Stanley G. Schroeder
THE LOWENBAUM PARTNERSHIP
Stanley G. Schroeder, app. Pending
William L. Lawson, app. Pending
222 South Central Avenue, Suite 901
St. Louis, Missouri 63105
Main (314) 863-0092
Direct (314) 746-4835
Fax (314) 746-4848
sschroeder@lowenbaumlaw.com
wlawson@lowenbaumlaw.com

/s/Donald J. Vogel
SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, P.C.
Donald J. Vogel, ARDC # 6191438
Sara L. Pettinger, ARDC # 6204647
30 West Monroe Street, Suite 600
Chicago, Illinois 60603
Main (312) 255-7200
Direct (312) 255-7178
Fax (312) 422-1224
dvogel@scopelitis.com

*Attorneys for Defendant National Asset Recovery Services, Inc.*

- 4 -

## **CERTIFICATE OF SERVICE**

I hereby certify that I have on this 18th day of July, 2008 served a true and correct copy of the foregoing through the electronic case filing system of the United States District Court for the Northern District of Illinois to the following counsel:

Tracy E. Stevenson
Robbins, Salomon & Patt, Ltd.
25 East Washington Street, Suite 1000
Chicago, IL 60602

and via First Class U.S. Mail to:

Andres J. Gallegos
Robbins, Salomon & Patt, Ltd.
25 East Washington Street, Suite 1000
Chicago, IL 60602

/s/Donald J. Vogel

# EXHIBIT A



CORPORATION SERVICE COMPANY

## Notice of Service of Process

KG3 / ALL
Transmittal Number: 5809054
Date Processed: 05/29/2008

Primary Contact:      Ms. Christine L. Cervellere
National Asset Recovery Services, Inc.
16253 Swingley Ridge Road
Suite 300
Saint Louis, MO 63017

| | |
|---|---|
| Entity: | National Asset Recovery Services, Inc.<br>Entity ID Number 2215759 |
| Entity Served: | National Asset Recovery Services, Inc. |
| Title of Action: | James Plonsker vs. National Asset Recovery Services, Inc |
| Document(s) Type: | Summons/Complaint |
| Nature of Action: | Labor / Employment |
| Court: | Cook Circuit Court, Illinois |
| Case Number: | 08 CH 18254 |
| Jurisdiction Served: | Illinois |
| Date Served on CSC: | 05/29/2008 |
| Answer or Appearance Due: | 30 Days |
| Originally Served On: | CSC |
| How Served: | Personal Service |
| Plaintiff's Attorney: | Tracey E. Stevenson<br>312-782-9000 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**
*CSC is SAS70 Type II certified for its Litigation Management System.*
2711 Centerville Road   Wilmington, DE 19808   (888) 690-2882   |   sop@cscinfo.com

| 2120 – Served | 2121 – Served | |
|---|---|---|
| 2220 – Not Served | 2221 – Not Served | |
| 2320 – Served By Mail | 2321 – Served By Mail | |
| 2420 – Served By Publication | 2421 – Served By Publication | |
| SUMMONS | ALIAS – SUMMONS | CCG N001-10M-1-07-05 (        ) |

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, _____CHANCERY_____ DIVISION

(Name all parties)

JAMES PLONSKER, an individual

v.

NATIONAL ASSET RECOVERY SERVICES, INC.

No. **08CH18254**

PLEASE SERVE:
National Asset Recovery Services, Inc.
c/o Lexis Document Services, Inc.
801 Adlai Stevenson Drive
Springfield, IL  62703

SUMMONS

To each Defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room ___802___, Chicago, Illinois 60602

☐ **District 2 – Skokie**
5600 Old Orchard Rd.
Skokie, IL  60077

☐ **District 3 – Rolling Meadows**
2121 Euclid
Rolling Meadows, IL  60008

☐ **District 4 – Maywood**
1500 Maybrook Ave.
Maywood, IL  60153

☐ **District 5 – Bridgeview**
10220 S. 76th Ave.
Bridgeview, IL  60455

☐ **District 6 – Markham**
16501 S. Kedzie Pkwy.
Markham, IL  60426

☐ **Child Support**
28 North Clark St., Room 200
Chicago, Illinois  60602

You must file within 30 days after service of this Summons, not counting the day of service.
IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

To the officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

Atty. No.: _80919_

Name: Tracy E. Stevenson/Robbins, Salomon & Patt, Ltd.

Atty. for: Plaintiff

Address: 25 E. Washington Street, Suite 1000

City/State/Zip: Chicago, IL  60602

Telephone: 312-782-9000

Service by Facsimile Transmission will be accepted at: _____

WITNESS, _____,

MAY 19 2008

DOROTHY
CLERK OF
Clerk of Court

Date of service _____
(To be inserted by officer on copy left with defendant or other person)

(Area Code)    (Facsimile Telephone Number)

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

2120 – Served                     2121 – Served
2220 – Not Served                 2221 – Not Served
2320 – Served By Mail             2321 – Served By Mail
2420 – Served By Publication      2421 – Served By Publication
SUMMONS              ALIAS – SUMMONS         CCG N001-10M-1-07-05 (                    )

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, ___CHANCERY___ DIVISION

(Name all parties)

JAMES PLONSKER, an individual

v.

NATIONAL ASSET RECOVERY SERVICES, INC.

No. __08CH18254__

PLEASE SERVE:
National Asset Recovery Services, Inc.
c/o Lexis Document Services, Inc.
801 Adlai Stevenson Drive
Springfield, IL  62703

SUMMONS

To each Defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room __802__, Chicago, Illinois 60602

☐ District 2 - Skokie            ☐ District 3 - Rolling Meadows      ☐ District 4 - Maywood
   5600 Old Orchard Rd.             2121 Euclid                        1500 Maybrook Ave.
   Skokie, IL  60077                Rolling Meadows, IL  60008         Maywood, IL  60153

☐ District 5 - Bridgeview        ☐ District 6 - Markham              ☐ Child Support
   10220 S. 76th Ave.               16501 S. Kedzie Pkwy.              28 North Clark St., Room 200
   Bridgeview, IL  60455           Markham, IL  60426                 Chicago, Illinois 60602

You must file within 30 days after service of this Summons, not counting the day of service.
IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

To the officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

Atty. No.: __80919__                              WITNESS, ___MAY 19 2008___ ,

Name: __Tracy E. Stevenson/Robbins, Salomon & Patt, Ltd.__

Atty. for: __Plaintiff__                          DOROTHY
                                                  CLERK OF                 Clerk of Court
Address: __25 E. Washington Street, Suite 1000__

City/State/Zip: __Chicago, IL  60602__            Date of service _____ ,
                                                  (To be inserted by officer on copy left with defendant
Telephone: __312-782-9000__                       or other person)

Service by Facsimile Transmission will be accepted at: _____
                                                       (Area Code)   (Facsimile Telephone Number)

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT CHANCERY DIVISION

JAMES PLONSKER, an individual,    )
                     Plaintiff,    )
                            )
                            )
   vs.                         )    No. _____
                            )
NATIONAL ASSET RECOVERY    )
SERVICES, INC.,    )
                            )
              Defendant.    )

**08CH18254**

## VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT

Now comes the Plaintiff, James Plonsker (hereafter "Plonsker"), by his attorneys, Robbins, Salomon & Patt, Ltd., and complains as follows against Defendant National Asset Recovery Services, Inc. (hereafter "NARS"):

### Nature of the Case

1.     This is an action for declaratory judgment pursuant to 735 ILCS 5/2-701 of the Illinois Code of Civil Procedure seeking a declaration of the parties rights and obligations with respect to a commission provision contained within an Employment Agreement.

### The Parties

2.     James Plonsker is an individual residing in Lake County, Illinois and doing business in Cook County, Illinois.

3.     NARS is a Missouri corporation authorized to do business in Delaware and Illinois.

BI5680
05/19/08

### Jurisdiction and Venue

4.      Jurisdiction is proper in this court pursuant to 735 ILCS 5/2-209(a) and (b) in that NARS does business in the State of Illinois.

5.      The venue is proper in Cook County, Illinois pursuant to 735 ILCS 5/2-101 in that the acts giving rise to this cause of action occurred in Cook County, Illinois and NARS does business in Cook County, Illinois.

### Facts Common to All Counts

6.      James Plonsker is an individual residing in Lake County, Illinois employed in the position of Vice President Sales effective October 10, 2005 pursuant to the terms of an Employment Agreement.

7.      NARS is a corporation conducting business operations in furtherance of providing other entities with customer service, sales, and recovery of assets.  NARS solicits and services clients in all areas of the United States including the State of Illinois, County of Cook.

8.      In or around October 3, 2005, Plonsker became an employee of NARS and started providing sales services for NARS at the NARS office located in Highland Park, Illinois.

9.      NARS prepared an Employment Agreement for Plonsker, executed that agreement and tendered to Plonsker on October 3, 2005 a copy of the Employment Agreement.  Plonsker executed the Employment Agreement on October 12, 2005.  A copy of the executed Employment Agreement is attached as Exhibit A.

10.     Following the commencement of his Employment Agreement, Plonsker began his job duties as a finder of business without customer support obligations.

11.    As a portion of the Employment Agreement, Plonsker was to receive a base salary plus commissions for his sales efforts. See agreement at Exhibit A, par. 1.

12.    Specifically, the Employment Agreement states as follows:

"Commissions. Plonsker shall receive the following commissions for his sales efforts:

(a)  Four percent of all revenues produced in the first year of each contract signed during the six months of his employment with NARS and for any proposals issued to the potential clients during the first six months of employment that become a signed contract at any time during Plonsker's first year of employment.

(b)  Two percent of all revenue produced during the second year of each contract signed during the initial six month term of employment with NARS and for any proposals issued to potential clients during the first six months of employment that became signed contracts at any time during Plonsker's first year of employment.

(c)  One percent of all revenue produced during the third year of each contract signed during the initial six month term of employment with NARS and for any proposals issued to potential clients during the first six months of employment that became a signed contract at any time during Plonsker's first year of employment.

(d)  To qualify for this consideration, both Plonsker and NARS must certify the legitimacy of all proposals issued during the first six months of his employment and

(e)  After the initial six months of employment, Plonsker's commission plan will be consistent with the NARS sales commission plan currently under review.

13.    Since commencing employment with NARS, Plonsker has tendered contracts executed by client to NARS and has received the requisite percentage of revenue as outlined in the commissions portion of his Employment Agreement.

14.    NARS paid to Plonsker commissions on the 15th day of each month for his sales efforts at the percentage and rate as outlined within the Employment Agreement.

15.    At no time did NARS alter, amend or otherwise change Plonsker's commission plan from that which is included within the Employment Agreement.

16.    On May 1, 2008 without prior notice and without cause, NARS discharged Plonsker from his position of employment as Vice President Sales.

17.    At that time, Plonsker sought from NARS payment of those commissions which were due or would become due in the future related to his Employment Agreement.

18.    As part of that Separation Agreement and General Release which was tendered to Plonsker on May 2, 2008, NARS specifically denied owing to Plonsker any and all commissions due under his Employment Agreement. A true and correct copy of the tendered Separation Agreement and General Release is attached hereto as Exhibit B.

19.    Plonsker did not sign the Separation Agreement and General Release and refused to so sign the Separation Agreement and General Release. Since that time, NARS has refused to comply with the express language of the Employment Agreement and has denied Plonsker his usual commissions for work performed in the normal course of business as Vice President of Sales which occurred between October, 2005 and May, 2008.

## COUNT I - BREACH OF CONTRACT AS TO COMMISSIONS

20.    Plonsker realleges paragraphs 1-19 above as and for paragraph 20 of this Count I as if fully stated herein.

21.    Plonsker and NARS executed an Employment Agreement specifically providing for the mandatory payment of commissions for his sales efforts made by Plonsker.

BI5680
05/16/08

4

22.    The Employment Agreement mandates that Missouri law shall control the interpretation and construction of the Employment Agreement.

23.    At all times there was in effect a statute commonly known as Sec. 407.912, Missouri Statute Annotated.  Specifically that statute states: "When a commission becomes due shall be determined in the following manner:  (1) the written terms of the contract between principal and sales representative shall control; . . . (3) when the contract between a sales representative and a principal is terminated, all commissions then due shall be paid within thirty days of such termination. Any and all commissions which become due after the date of such termination shall be paid within thirty days of becoming due."

24.    At all times herein, Plonsker was a sales representative as defined within Missouri law recognizing commission employees.

25.    At all times herein Plonsker's job duties require that he act as a finder of business in which he is to find a customer and thereafter has no further duty to the customer as far as servicing or maintaining a relationship.

26.    Plonsker complied with all elements of his Employment Agreement by finding business, bringing it to NARS so that NARS can service the business.

27.    The four corners of the Employment Agreement are to be construed against the drafter and in favor of Plonsker and demonstrates the manner of payment of commissions for sales efforts so that parole evidence is not necessary.

28.    There is an actual and justiciable controversy between the parties which may be determined by a judgment order of this court.  Pursuant to the terms of 735 ILCS 5/2-701, this court

BI5680
05/16/08

5

has the power to declare and adjudicate the rights and liabilities of the parties hereto under the terms and provisions of the Employment Agreement.

WHEREFORE, the Plaintiff, James Plonsker, respectfully requests this court to find and declare as follows:

(a)     The written Employment Agreement is a valid contract;

(b)     NARS is obligated to comply with the terms of the Employment Agreement;

(c)     Plonsker is entitled to the commissions as provided within the Employment Agreement for the term as outlined to and through three years following the signing of each and every contract;

(d)     Grant any other such relief as this Court deems just and equitable.

Respectfully submitted,

Tracy E. Stevenson, One of the Attorneys for Plaintiff

Tracy E. Stevenson
Andrés J. Gallegos
Robbins, Salomon & Patt, Ltd.
Attorneys for Plaintiff
25 East Washington Street, Suite 1000
Chicago, IL  60602
312-782-9000
#80919

## VERIFICATION BY CERTIFICATION

Under penalties of perjury as provided by law pursuant to 735 ILCS 5/1-109, the undersigned certifies that the statements set forth in this document are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

Dated:    5/15/08

_____

JAMES PLONSKER

# EMPLOYMENT AGREEMENT

This Agreement, dated and effective this 3rd day of October, 2005, is hereby entered into between National Asset Recovery Services, Inc. ("NARS") and James Plonsker ("Plonsker"). NARS and **Plonsker** hereby agree as follows:

1.     <u>Term of Employment</u>.  **Plonsker** is being employed in the position of Vice President, Sales.  Effective Date of employment is October 10, 2005.  Nothing in this Agreement shall change the at-will status of **Plonsker**'s employment. Accordingly, **Plonsker**'s employment may be terminated at any time, with or without cause, by either the Company or **Plonsker**.

    <u>Compensation</u>.  For his services to be performed hereunder, NARS shall pay **Plonsker**'s base salary of $100,000, payable in installments not less frequently than twice per month, less deductions and withholdings as required by law. NARS will pay to **Plonsker** a $25,000.00 draw against Commissions in **Plonsker**'s first year of employment, to be paid out in monthly installments for twelve (12) months.

    <u>Commissions</u>.  **Plonsker** shall receive the following commission for his sales efforts:

    (a) Four percent (4%) of all revenue produced in the first year of each contract for contracts signed during the six months of his employment with NARS and for any proposals issued to potential clients during the first six months of employment that become signed contracts at any time during **Plonsker**'s first year of employment.

    (b) Two percent (2%) of all revenue produced during the second year of each contract signed during the initial six month term of employment with NARS and for any proposals issued to potential clients during the first six months of employment that become signed contracts at any time during **Plonsker**'s first year of employment.

    (c) One percent (1%) of all revenue produced during the third year of each contract signed during the initial six month term of employment with NARS and for any proposals issued to potential clients during the first six months of employment that become signed contracts at any time during **Plonsker**'s first year of employment.

    (d) To qualify for this consideration, both **Plonsker** and NARS must certify the legitimacy of all proposals issued during the first six months of his employment.

    (e) After the initial six months of employment, **Plonkser**'s commission plan will be consistent with the NARS sales commission plan currently under review.

2.     <u>Benefits</u>.  During the term of this Agreement, **Plonsker** shall be entitled to the following benefits:



PLAINTIFF'S EXHIBIT
A

(a) <u>Vacation</u>: **Plonsker** will earn two (2) weeks vacation per 12-month period until two years of employment. After two years of employment **Plonsker** will earn three (3) weeks of vacation per 12-month period.

(b) <u>401k</u>: **Plonsker** will be eligible to participate in NARS 401k plan after 12 months of employment.

(c) <u>Other Benefits</u>: **Plonsker** will receive other Health and general employee benefits as described in the NARS' employee manual.

5.   <u>Relocation</u>.   Relocation is not a requirement of this position.

6.   <u>Drug Testing</u>. **Plonsker** shall be required to undergo random drug testing. Failure to cooperate in any required drug test or a positive result shall be grounds for the termination of this Agreement, further any finding of drug-use other than prescribed by a physician, possession, sale, control, attempt to sell or any other use of drugs other than prescribed by a physician shall be grounds for termination.

7.   <u>Indemnification and Hold Harmless</u>. **Plonsker** declares that any non-compete agreements that **Plonsker** may have signed with other companies, do not prohibit his ability to provide services under this Agreement. This Agreement shall terminate immediately, if it is determined by NARS or any judicial body, that any non-compete agreement signed by **Plonsker** prohibits him from performing services under this Agreement. In addition, **Plonsker** agrees to indemnify and hold harmless NARS, its officers, directors, shareholders, employees and other representatives ("Indemnified Parties") from all losses, claims, damages, liabilities, penalties, costs, and attorneys fees incurred by an Indemnified Party resulting from reliance on **Plonsker's** declaration that any non-compete agreement signed by **Plonsker** is unenforceable for the work performed under this Agreement.

8.   <u>Non Solicitation of Employees</u>. **Plonsker** agree that while he is employed by NARS and for a period of one (1) years after termination of his employment for any reason, with or without cause, he will not directly or indirectly hire, or attempt to hire, any employee of NARS nor will he encourage any employee of NARS to terminate employment with NARS.

9.   <u>Protection of NARS' Confidential Information</u>. **Plonsker** shall keep confidential, use solely for his duties hereunder and not, directly or indirectly, disclose at any time during or for a period of one (1) year following the termination of his employment, any confidential or proprietary information about the business and affairs of NARS without the express written permission of NARS. Confidential or proprietary information is deemed to be methods of operation unique to NARS, customers and customer lists unique to NARS, prices and details of contracts with customers, consultants, suppliers or employees, business management methods,

marketing plans, forecasts, or other specialized information relating to the business of NARS and which is unique to NARS and not commonly known in the industry.

10. <u>Nonsolicitation</u>. For a period of one (1) year following termination of his employment, **Plonsker** agrees not to solicit, directly or indirectly, the business of any NARS client that was an established NARS client as of the date **Plonsker** commenced his employment or that was acquired as a client during the period of **Plonsker's** employment. To this end, **Plonsker's** covenants and affirmatively represents that should his employment with NARS end for any reason; he will not remove, retain, or otherwise possess, actually or constructively, any NARS customer list or customer information of any kind.

11. <u>Specific Enforcement</u>. **Plonsker** agrees that any breach of Paragraphs 6 through 9 hereof will cause NARS irreparable harm for which NARS will have no adequate remedy at law. Accordingly, **Plonsker** agrees that NARS may, in addition to any other remedies available in law or equity, have specific performance of the terms contained in Paragraphs 8 through 11 of this Agreement in any court having jurisdiction.

12. <u>Severability</u>. If any provision of this Agreement is held invalid, such invalidity shall not affect the other provisions of this Agreement which shall be given effect independently of the invalid provisions; and, in such circumstances, the invalid provision is severable.

13. <u>Governing Law</u>. This Agreement shall be construed in accordance with the laws of the State of Missouri.

14. <u>Successors and Assigns</u>. The rights and obligations of NARS under this Agreement shall inure to the benefit of its successors and assigns. This Agreement, being personal to **Plonsker**, cannot be assigned by **Plonsker**, but his personal representative shall be bound by all its terms and conditions.

15. <u>Amendments, Etc.</u> No modifications, amendments, extensions, or waivers of this Agreement or any provisions hereof shall be binding upon NARS or **Plonsker** unless in writing and signed by NARS' President.

16. <u>Complete Agreement</u>. This Agreement shall constitute the entire agreement and understandings between NARS and **Plonsker** and shall supersede and replace all prior and contemporaneous agreements and understandings, written and oral. This should not be mistaken for a contract of employment for a specific duration of time. **Plonsker's** employment is at-will and terminable by either **Plonsker** or NARS at any time.

IN WITNESS WHEREOF, the parties have signed this Agreement effective as of the day and year first above written.

125111.1

_____ :                          NATIONAL ASSET RECOVERY
                                       SERVICES, INC.

Signature: _____   By: James E. Quinn_____

Date: _____10/12/2005_____    Signature: _____

                                       Date: _____

## SEPARATION AGREEMENT
## and GENERAL RELEASE

This Separation Agreement and General Release ("Agreement") is made and entered between James Plonsker ("Mr. Plonsker") and National Asset Recovery Services, Inc. ("NARS") collectively referred to as "the Parties".

### Recitals

A.  Mr. Plonsker has been employed by NARS as Vice President, Sales.

B.  Mr. Plonsker' employment with NARS will end and the Parties wish to end the relationship without any further disagreements or disputes.

C.  The Parties have agreed on a settlement covering the terms of Mr. Plonsker's separation of employment.

D.  The Parties desire to reduce their Agreement to writing.

E.  In consideration of the mutual promises, covenants and agreements herein contained and other valid consideration, the adequacy, sufficiency and exchange thereof are hereby acknowledged, the undersigned Parties do hereby agree as follows.

1.  **Termination of Employment and Payment of Final Wages and Distributions.** Mr. Plonsker' employment with NARS will end on May 1, 2008. Except as provided in this Agreement, Mr. Plonsker agrees that he has received all compensations and benefits due to date from NARS.

2.  **Immediate Return of Property.** Upon his termination of employment, Mr. Plonsker shall arrange for the return to NARS of any and all property in his possession belonging to NARS, including keys, credit cards, cellular telephones, communication devices of any type, laptop or desktop computer, as well as all documents or information concerning the business, policies, procedures and records or the affairs of NARS, NARS' clients, client consultants, suppliers, vendors, contractors, or any other documents or information deemed confidential or proprietary by NARS or belonging to NARS or acquired while performing services for it.

3.  **Severance Benefits.** In exchange for executing and not revoking this Agreement and as severance compensation, NARS shall undertake the following:

(a)  **Cash Severance Payment.** NARS will continue to pay Mr. Plonsker's base salary at the rate of Eight Thousand Three Hundred Thirty Three and 33/100 Dollars ($8,333.33) per month for three (3) months commencing at the time specified below, less such withholdings which NARS determines appropriate, for a total severance benefit of Twenty Five Thousand Dollars ($25,000.00). These payments will be made on NARS' regular payroll dates with the first payment to commence on the first payroll date following Mr. Plonsker's execution of this Agreement.



(b)   **Health Care Continuation**.  Mr. Plonsker will remain on NARS' group health insurance Plan through April 30, 2008.  Thereafter, Mr. Plonsker may elect to continue to participate in NARS' group health insurance plan to the extent permitted under continuation coverage terms of those plans as required by the Consolidated Omnibus Budget Reconciliation Act ("COBRA") and in accordance with terms of the plan as they may exist or may be amended from time to time.  If Mr. Plonsker elects continuation coverage, NARS will allow Mr. Plonsker to pay a reduced COBRA premium in an amount equal to the normal payroll deduction for group health insurance coverage paid by similarly situated salaried employees at NARS' Chesterfield facility for the first three (3) months of COBRA continuation.  After which time, if Mr. Plonsker intends to continue his COBRA payments, he will be responsible for the normal COBRA premiums for the remainder of any continuation coverage entitlement.

Mr. Plonsker expressly agrees that the severance compensations that he will receive pursuant to this Agreement and as identified above are sums to which he is not already entitled. The parties hereto agree, however, that no payments or benefit continuations described in this Paragraph 3 will be made prior to Mr. Plonsker's execution of this Agreement.   During the period required for payment of any of the foregoing severance compensations, Mr. Plonsker shall not be considered to be a NARS employee by reason of such compensations or otherwise.

4.    **Other Benefits**.  Mr. Plonsker agrees and acknowledges that, following his termination and except as specifically provided above, he shall not be eligible to participate in any of NARS' compensation, commission or employee benefit plans or arrangements, nor shall he be eligible to receive any bonuses, commissions or other compensation other than that described in this Agreement.

5.    **Release.**  In consideration of the payments and other benefits provided by this Agreement and the stipulations and covenants made hereunder, Mr. Plonsker, with the intent of binding himself and his successors, heirs, assigns, attorneys, and family members, hereby releases and forever discharges NARS and its parent, affiliated and subsidiary entities including National Asset Recovery Services, L.L.C. (Jamaica) and National Asset Recovery Services, Inc. (Panama), and all of their officers, directors, agents, representatives, insurers, employees, employee benefit plans and their fiduciaries (the "Released Parties") from and against any and all liabilities, claims, grievances, demands, charges, actions and causes of action whatsoever whether known or unknown and which are or may be based upon any known or unknown fact, condition, or incident occurring prior to the date of this Agreement as well as claims which may arise after the date of this Agreement which are based or rely upon facts, conditions, relationships, agreements or incidents occurring prior to the date of this Agreement including Mr. Plonsker's employment relationship with NARS as well as any fact or circumstance related to Mr. Plonsker's employment or separation of employment from NARS, and including all claims arising under any federal, state, or local law, including but not limited to, any and all claims arising under or pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.*; the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.*; the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 *et seq.*; the

Civil Rights Act of 1866, 42 U.S.C. § 1981; the Civil Rights Act of 1871, 42 U.S.C. § 1983; Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C., § 2000 *et seq.*; the Civil Rights Act of 1991, 42 U.S.C. § 1981(a) *et seq*; the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 *et seq.*; the Missouri Human Rights Act, RSMo. Chapter 213 *et seq.*, the Missouri Service Letter Statute, RSMo. §290.140, Missouri Sales Commission payment statutes, RSMo. Chapter 407, as well as any and all other statutes or ordinances or any state, and any and all claims arising under or pursuant to any statute or common law including those concerning in any way employment, wages, commissions on NARS revenues arising prior to or after that date of this Agreement, contract, breach of contract, discrimination in employment, or termination of employment, any and all claims for personal injury, emotional distress, libel, slander, defamation, and other physical, economic, or emotional injury, and all claims for attorney's fees and costs as well as any claims that Mr. Plonsker may have had under his Employment Agreement effective October 2, 2005 with NARS.

Mr. Plonsker also agrees that he will not institute any claims for damages or for other relief by charge, lawsuit or otherwise, nor will he authorize, encourage, induce or assist any other person or entity, governmental or otherwise, to enter into any claim for damages or otherwise via administrative or legal proceedings against the Released Parties for any such claims. If any Court rules that such waiver of rights to file or have filed any judicial action or administrative claim is ineffective, then Mr. Plonsker will not seek or accept any money damages or personal relief upon the filing of any such administrative or judicial charges or complaints.

Notwithstanding the foregoing, nothing in this Agreement interferes with Plonsker's right to merely file a charge with the Equal Employment Opportunity Commission ("EEOC"), or merely participate in an EEOC proceeding.

If any person brings any claim or action for recovery which is contrary to the above Release, then the party defendant to that action shall be entitled to reimbursement for costs and attorney's fees incurred in defense of that claim. If Mr. Plonsker brings, participates in or is benefited by any action contrary to the above Release, he also agrees to repay to NARS all amounts paid to him or provided for his benefit pursuant to Paragraph 3.

This Release does not discharge the Parties from obligations they have under this Agreement. Mr. Plonsker also agrees to waive any rights to, or to be considered for, future employment with NARS and its operations. Other than as set forth in this Agreement, Mr. Plonsker specifically waives any claim that he may have to receive a bonus, commissions or deferred compensation from NARS under any of its plans or any agreements with him except as stated herein.

6.    **Disclosure of Confidential or Proprietary Information.**    In addition to his duties of confidentiality and nondisclosure under Paragraph 9 of his Employment Agreement with NARS effective October 3, 2005 ("Employment Agreement") which provision Mr. Plonsker agrees remains in effect, Mr. Plonsker shall not at any time communicate or disclose to any unauthorized person or use for his own account, without the advance prior written consent of NARS, any of its trade secrets, any information concerning the business, methods of operation,

finances, or affairs of NARS, NARS' customers or clients or their consultants, suppliers, vendors, or contractors, or any other information deemed confidential or proprietary by NARS.

7.  **Non-Disparagement.**  Mr. Plonsker shall conduct himself so as to refrain from interference with, disparagement of, or harm to NARS.  Mr. Plonsker agrees that he will not make any critical or disparaging remarks about NARS, NARS' employees, managers, or officers or regarding NARS' operations, performance or business practices to other NARS' employees, NARS' clients and customers, any members of the investment community (such as investment advisors, consultants and managers) vendors, or any other person.

8.  **Non-Disclosure.**  Mr. Plonsker agrees to maintain the existence of this Agreement, as well as its terms and conditions, as confidential and shall not make public or disclose the existence or terms thereof to any person other than to his immediate family, attorney and tax advisor, or as may be necessary by court order, without the express written consent of NARS. If Mr. Plonsker violates this promise, he will become immediately liable to NARS for the amounts of compensation and benefits provided pursuant to paragraph 3 above, plus any costs, including attorney's fees, incurred to recover that sum, plus any other relief to which NARS by be due at law or equity.

9.  **Non-Solicitation and Non-Inducement**.  NARS and Mr. Plonsker acknowledge that during the course of Mr. Plonsker's employment with NARS, Mr. Plonsker has learned of and made contact with entities and persons that have retained or purchased the services provided by NARS (hereinafter referred to as the "NARS Clients").  By reason of Mr. Plonsker's employment and consulting relationship with NARS, Mr. Plonsker was provided with access to NARS Clients and developed relationships with NARS Clients and was directly involved in developing/identifying NARS Clients.

In this regard, Mr. Plonsker agrees that the Non-Solicitation of Employees provision contained in Paragraph 9 of his Employment Agreement with NARS will continue to be in full force and effect.

In addition to his duties of Non-Solicitation under Paragraph 10 of his Employment Agreement with NARS, Mr. Plonsker further agrees that for a period of one (1) year after termination of his employment, Mr. Plonsker will not directly or indirectly, on his own behalf or on behalf of any third party, or as a sole proprietor, joint venture, partner, employee, officer, director, consultant, shareholder, investor, or otherwise solicit the business of any of NARS' Clients and customers or prospective clients with which Mr. Plonsker either had any personal contact, had any interface with or with their employees, called upon, contacted, solicited or attempted to solicit business while he was employed with NARS, nor will he contact such clients or prospective clients for any business purpose that is competitive with NARS' business.

10.  **Choice of Law and Venue.**  The Parties agree that this Agreement shall be construed pursuant to the laws of the State of Missouri, without regard to its conflict of laws provisions.  The Parties further agree that any dispute related to this Agreement or its application, interpretation or enforcement shall be resolved only in the United States District Court for the Eastern District of Missouri, if that court possesses jurisdiction, or otherwise in the

Circuit Court for the County of St. Louis, Missouri, Twenty-First Judicial Circuit. The parties agree that any litigation regarding this Agreement, or Mr. Plonsker's Employment Agreement with NARS, shall be resolved in such forum by proceeding before a judge without a jury and both parties hereto specifically waive trial by jury of any claim or action arising hereunder or under such Employment Agreement.

11.    **Breach of the Agreement.** If Mr. Plonsker breaches or threatens to breach his obligations under any provision of this Agreement or his Employment Agreement with NARS, NARS will experience irreparable harm for which money damages alone will not provide an adequate remedy. Accordingly, NARS shall have the right to seek equitable relief in addition to legal relief to remedy such breaches. In the event of a breach, Mr. Plonsker shall pay NARS' costs, including attorneys' fees, incurred to enforce this Agreement or the Employment Agreement or to settle any disputes concerning the enforceability of either Agreement's provisions.

Furthermore, in the event of a breach either Agreement by Mr. Plonsker, the Parties expressly agree that NARS shall be relieved of any further obligation to make or provide any of the severance compensations described under this Agreement and, in addition to any other relief which may be awarded to NARS against Mr. Plonsker, he shall repay to NARS all sums paid to him or on his behalf under Paragraph 3 in addition to any other damages or relief to which NARS or any Released Party might be entitled.

12.    **Non-Admission.** This Agreement does not and shall not constitute an admission by NARS of any fact or conclusion of law. Without limiting the foregoing, nothing in this Agreement shall constitute an admission that any action taken during Mr. Plonsker's employment against him or the termination of that employment was wrongful or unlawful in any manner whatsoever.

13.    **Entire Agreement and Severability.** This Agreement constitutes the full and complete Agreement between Mr. Plonsker and NARS with respect to the subject matter hereof and supersedes all negotiations and representations with respect to its terms. No other Agreement, whether oral or written, shall be construed to alter the terms of this Agreement. Mr. Plonsker represents and warrants that no promise or inducement has been offered or made except as set forth herein and that this Agreement is executed without reliance upon any statement or representation by NARS or any person acting on its behalf. If any portion of this Agreement is held to be invalid, the remainder of the Agreement shall remain in full force and effect as if the invalid provisions were not included herein.

14.    **Prior Agreement.** The Parties hereto acknowledge that NARS and Mr. Plonsker entered into an Employment Agreement effective October 2, 3005. Mr. Plonsker acknowledges that NARS' obligations under this Employment Agreement have been performed in their entirety by NARS. Mr. Plonsker also releases all claims, rights or entitlements which he may have or may arise under his Employment Agreement with NARS. Provided, however, the provisions of Indemnification, Non-Soliciation of Employees, Protection of NARS' Confidential Information, and Non-Soliciation of Paragraphs 7 through 10 shall continue to apply as written, subject to their enhancement and any modification hereunder, and the enforcement provisions hereof shall

apply to cure any breach, select the law and venue applicable to any dispute arising with respect to such provisions of the Employment Agreement.

15.    **Period for Consideration of This Agreement.**    Mr. Plonsker has until 5:00 p.m., central time, on May 7, 2008 within which to consider this Agreement and execute it or reject it.    If Mr. Plonsker does not execute this Agreement and return it to NARS care of the undersigned on or before that date and time, the offers contained within the Agreement are considered withdrawn and this Agreement will be considered null and void and as never having been in effect.

MR. PLONSKER ACKNOWLEDGES THAT HE HAS READ THIS AGREEMENT AND RELEASE CONSISTING OF FIFTEEN (15) NUMBERED PARAGRAPHS; THAT HE HAS HAD A REASONABLE PERIOD WITHIN WHICH TO CONSIDER IT AND FULLY UNDERSTANDS IT AND VOLUNTARILY ACCEPTS ALL OF ITS TERMS; THAT HE HAS HAD AN ADEQUATE TIME TO DISCUSS THIS DOCUMENT WITH AN ATTORNEY AND HAS DONE SO OR VOLUNTARILY ELECTED NOT TO DO SO; AND HE WILL ABIDE BY ITS TERMS.

The Parties hereby execute this Agreement as of the date written below

NATIONAL ASSET RECOVERY SERVICES, INC.

| | | | |
|---|---|---|---|
| James Plonsker | Date | Greg Cappa | Date |
| | | Executive Vice President | |

# EXHIBIT B



CORPORATION SERVICE COMPANY®

# Notice of Service of Process

BZT / ALL
Transmittal Number: 5852649
Date Processed: 06/19/2008

| | |
|---|---|
| Primary Contact: | Ms. Christine L. Cervellere<br>National Asset Recovery Services, Inc.<br>16253 Swingley Ridge Road<br>Suite 300<br>Saint Louis, MO 63017 |
| Copy of transmittal only provided to: | Gregory Cappa<br>Vincent Ko |

| | |
|---|---|
| Entity: | National Asset Recovery Services, Inc.<br>Entity ID Number 2215759 |
| Entity Served: | National Asset Recovery Services, Inc. |
| Title of Action: | James Plonsker vs. National Asset Recovery Services, Inc. |
| Document(s) Type: | Summons/Complaint |
| Nature of Action: | Contract |
| Court: | Cook Circuit Court, Illinois |
| Case Number: | 2008L006302 |
| Jurisdiction Served: | Delaware |
| Date Served on CSC: | 06/19/2008 |
| Answer or Appearance Due: | 30 Days |
| Originally Served On: | CSC |
| How Served: | Personal Service |
| Plaintiff's Attorney: | Tracy E. Stevenson<br>312-782-9000 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**
*CSC is SAS70 Type II certified for its Litigation Management System.*
2711 Centerville Road   Wilmington, DE 19808   (888) 690-2882   |   sop@cscinfo.com

| | |
|---|---|
| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| **SUMMONS** | **ALIAS - SUMMONS**   CCG N001-10M-1-07-05 ( ) |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, ____LAW____ DIVISION

(Name all parties)

JAMES PLONSKER, an individual

v.

National Asset Recovery Services, Inc. and Greg Cappa

2008L006302
CALENDAR/ROOM N
TIME 00:00
No. Breach of Contract

PLEASE SERVE:
National Asset Recovery Services, Inc.
c/o Lexis Document Services, Inc.
2711 Centerville Road, Suite 400
Wilmington, DE  19808

**SUMMONS**

To each Defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room ___801___, Chicago, Illinois 60602

| | | |
|---|---|---|
| ☐ **District 2 - Skokie** | ☐ **District 3 - Rolling Meadows** | ☐ **District 4 - Maywood** |
| 5600 Old Orchard Rd. | 2121 Euclid | 1500 Maybrook Ave. |
| Skokie, IL 60077 | Rolling Meadows, IL 60008 | Maywood, IL 60153 |
| ☐ **District 5 - Bridgeview** | ☐ **District 6 - Markham** | ☐ **Child Support** |
| 10220 S. 76th Ave. | 16501 S. Kedzie Pkwy. | 28 North Clark St., Room 200 |
| Bridgeview, IL 60455 | Markham, IL 60426 | Chicago, Illinois 60602 |

You must file within 30 days after service of this Summons, not counting the day of service.
**IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.**

To the officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

WITNESS, JUN - 9 2008

Atty. No.: 80919

Name: Tracy E. Stevenson/Robbins, Salomon & Patt, Ltd.

Atty. for: Plaintiff

Address: 25 E. Washington Street, Suite 1000

City/State/Zip: Chicago, IL 60602

Telephone: 312-782-9000

Service by Facsimile Transmission will be accepted at: _____

_____
Clerk of Court

Date of service: _____
(To be inserted by officer on copy left with defendant or other person)

_____
(Area Code)   (Facsimile Telephone Number)

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

| | | |
|---|---|---|
| JAMES PLONSKER, an individual, | ) | 2008L006302 |
| | ) | CALENDAR/ROOM N |
| Plaintiff, | ) | TIME 00:00 |
| | ) | Breach of Contract |
| vs. | ) | No. _____ |
| | ) | |
| NATIONAL ASSET RECOVERY | ) | Plaintiff Demands Trial by Jury |
| SERVICES, INC., an Illinois corporation, | ) | |
| and GREG CAPPA, individually, | ) | |
| | ) | |
| Defendants. | ) | |

**FILED**
2008 JUN -9 PM 4:03
DOROTHY BROWN
CLERK OF CIRCUIT COURT
LAW DIVISION

### COMPLAINT AT LAW

Now comes the Plaintiff, James Plonsker (hereafter "Plonsker"), by his attorneys, Robbins, Salomon & Patt, Ltd., and for his complaint at law, states as follows:

### The Parties

1.   Plaintiff herein is an Illinois resident and a former employee of National Asset Recovery Services Inc. (hereafter NARS).

2.   NARS is a Missouri corporation duly registered to conduct business in the state of Illinois including Cook County, Illinois.

3.   Greg Cappa, is a principle of NARS, doing business in Illinois and upon information and belief residing in Missouri.

### COUNT I - Conversion

1.   On October 3, 2005, the Plaintiff and Defendant entered into a written employment agreement. Under its terms, Defendant agreed to employ Plaintiff as a Vice President, Sales.

BI1971
06/06/08

2.      The effective date of employment was October 10, 2005.  Plonsker was an at-will employee drawing a base salary of $100,000 with additional commissions and benefits as set forth within the contract. A true and correct copy of the Employment Agreement is attached as Ex A.

3.      Neither Defendant NARS nor CAPPA  issued written warnings or otherwise advise Plaintiff of any deficiency in his job performance pursuant to the terms of contract.

4.      Plaintiff through his obligations to the Defendant, caused Defendants revenues to rise substantially, brought in revenues higher than any other Vice President, Sales, earned the highest commissions due to his job performance, and brought to NARS its largest account ever.

5.      Despite Plaintiff's compliance with job requirements, on May 1, 2008, the Defendants wrongfully and without just cause, and outside the terms of the employment agreement, discharged the Plaintiff.

6.      In discharging Plaintiff, Defendants intentionally converted assets belonging to the plaintiff into assets of the Corporation in that Defendant willfully denied Plaintiff his earned but not yet due commissions, thus depriving Plaintiff to his personal property (the commissions) in direct violation of public policy.

7.      Since that time, Defendants have prevented Plaintiff from performing Plaintiff's part of the agreement, although Plaintiff has duly tendered his services to the Defendants and has been, and still is, ready and willing to perform the services according to the employment agreement.

8.      Defendants actions in discharging Plaintiff were solely for the purpose of taking the property of Plaintiff and converting said property to that of the Defendant.

9.      Under the terms of the employment agreement, Plaintiff herein is due earned vacation time in the amount two weeks for his first year and three weeks of vacation for each following

twelve-month period, 401(K) Plan vested benefits, and ongoing health and general employee benefits as described in the NARS Employee Manual as well as his earned commission and salary.

WHEREFORE, the Plaintiff herein, James Plonsker, prays for judgment in his favor and against Defendant, National Asset Recovery Services, Inc., an amount in excess of the $50,000.00 jurisdictional amounts plus punitive damages.

## COUNT II - Fraud in the Inducement

Pleading in the alternative, pursuant to Section 2-613 of the Illinois Code of Civil Procedure, and further complains of the Defendants as follows:

1.    Plaintiff herein entered into an employment agreement with NARS on October 3, 2005.

2.    Plaintiff reviewed the agreement and accepted the agreement by signing the employment agreement where indicated on October 12, 2005.

3.    Pursuant to the written agreement signed by Plaintiff, the Plaintiff was to receive salary and commissions for his sales efforts as Vice President, Sales.

4.    The commissions set forth in the employment agreement provide for the earning of commissions subsequent to the signing of contracts by clients for a three-year period commencing on the date the client signs the contract.

5.    Prior to the execution of the agreement, NARS, through its agents and representatives, specifically, Greg Cappa, represented and warranted that it would abide by the terms of the employment agreement including the payment of commissions for three years following the entry of any contracts with clients.

6.    Plaintiff herein relied on NARS' and Cappa's representation in entering into the aforesaid employment agreement and in accepting the compensation and commission package as written.

7.    NARS and its employees and agents failed to sign the employment agreement and failed to permit the client, Charter Ltd., from entering into a contract of sufficient duration to allow payment of commission through the third year of each contract and, instead, intentionally knowingly misrepresented that the commissions would be paid for three years and intentionally limited the duration of contracts with clients so as to prohibit the payment of commissions as they became due.

8.    NARS and Cappa's misrepresentations were intentional and knowing and were intended to defraud Plonsker by inducing Plonsker to enter into an employment agreement and compensation and commission package which NARS and Cappa knew it would not deliver and knew it would not execute nor be bound by the terms therein.

9.    NARS and Cappa failed to properly pay commissions to Plonsker for a three-year period of time following the execution by Charter, Ltd. of a contract with NARS, limited the duration of the Charter, Ltd. contract so as to prevent payment throughout the commission period set forth in the employment agreement and intentionally failed to execute the employment agreement so as to raise the defense that NARS and its agent Cappa were not bound by the terms therein.

10.    Due to Defendants' intentional and knowing actions to defraud, Plonsker entered into the employment agreement but was not paid out the relevant commissions owed pursuant to said agreement and thus has suffered damages in excess of $600,000 related to commissions which NARS refuses to pay.

WHEREFORE, Plaintiff herein, James Plonsker, prays for judgment against NARS and Cappa in excess of $600,000.00 plus costs and punitive damages in the amount of $800,000.00.

## COUNT III - Breach of Contract

1.    On October 3, 2005, the Plaintiff and Defendant entered into a written employment agreement.  Under its terms, Defendant agreed to employ Plaintiff as a Vice President, Sales.

2.    The effective date of employment was October 10, 2005.  Plonsker was an at-will employee drawing a base salary of $100,000 with additional commissions and benefits as set forth within the contract.  A true and correct copy of the Employment Agreement is attached as Ex. A. Plonsker performed all conditions of the contract.

3.    Cappa was at all relevant times Plaintiff's superior and the individual who handled Plaintiff's contracts after a client had executed an agreement.

4.    At all relevant times, Plaintiff was engaged in the business of a Vice President, Sales, under which a portion of the contract related to commission for sales efforts as follows:

Sales Commission

NARS will pay a sales commission on all new business contracted according to the following schedule:

- Four (4%) percent of total revenue for year one
- Two (2%) percent of total revenue for year two
- One (1%) percent of total revenue for year three

After three years of operation each contracted program becomes a house account.
Commission Period:

For the purposes of commission payment, year one will commence with the actual start of services for each program.  Commission will not be paid on training revenue [other than Plonsker's training revenue from Panama].

Definition Of New Business Vs. Ramp Up

All new business requiring an agreement or a separate addendum, schedule, or statement of work shall be considered new business for commission purposes. All business that is governed under an existing agreement, addendum, schedule, or statement of work is considered ramping and subject to the commission arrangements of the original document.

Ongoing Commission For Sales Involving CEO/EVP/SVP

Any sales contracted by sales personnel from leads provided by the CEO, EVP or SVP of Sales will be paid at 50% of existing annual commission values. For any new sales opportunity from a salesperson's existing account, that is closed by the CEO/EVP/SVP, the salesperson will be paid a commission of 50% of the annual rates.

On October 12, 2005, Plaintiff and Defendant entered into a written agreement by which Defendant agreed to give Plaintiff various commissions for those sales he brought into the company.

5.     By the terms of the agreement, Defendant agreed to pay Plaintiff as compensation for his services, a certain commission based upon the percentage of the revenue produced. As a result of the employment agreement, Plaintiff herein procured various contracts for proposals issued to potential clients for which said commissions were to become due.

6.     All commissions are earned at the time a customer executes a contract.

7.     On or about May 1, 2008, Plaintiff herein was wrongfully discharged from employment for which earned commissions are now due and owing or will become due and owing in the future, although already earned.

8.     At all times herein, the employment agreement included a sales commission pursuant to Missouri Statute.

9.     At all relevant times there was a statute in effect noting that nothing in the statute shall be construed to impair a sales representative from collecting commissions on products or services ordered prior to the termination of the contract between the principal and the sales

representative, but delivered and accepted by the purchaser after such termination. See Missouri Statute, § 407.912(2).

10.    Further, at all times herein, a Missouri Statute, pursuant to § 407.912(3), states that when a contract between a sales representative and a principal is terminated, all commissions then due shall be paid within 30 days of such termination. Any and all commissions which become due after the date of such termination shall be paid within 30 days of becoming due.

11.    At all times herein, Plaintiff was retained by Defendant to be a finder of business and bring the business into Defendant.

12.    Plaintiff did find a client for Defendants herein to the express term of his contract. The contract is silent as to the number of clients a finder of business must accrue in a given term.

13.    Defendant breached its contractual duties to Plaintiff by wilfully failing to abide by the terms of the employment agreement in various ways including but not limited to the following:

    a.    Discharged Plaintiff in order to convert Plaintiff's commission for itself;

    b.    intentionally withheld commissions due and owing to Plaintiff;

    c.    intentionally and wrongfully devised policy outside of the written agreement in order to convert Plaintiff's commissions for the benefit of Defendant;

    d.    Intentionally failed to advise Plaintiff of his pending termination;

    e.    Knowingly and intentionally failing to give an accounting to Plaintiff for monies due despite demand for same;

    f.    Otherwise breached the express terms of the employment contract.

14.　　As a direct result of Defendants breaches, Plaintiff is due and owing salaries, benefits and commissions in excess of $600,000.  Plaintiff has performed all of the acts to be done by him pursuant to the terms of the employment agreement.

WHEREFORE, the Plaintiff herein, James Plonsker, prays for judgment in his favor and against Defendant, National Asset Recovery Services, Inc., in the amount of $600,000 plus interest and damages for wilful conduct as this court deems just.

## COUNT IV - Accounting

15.　　Plaintiff herein incorporates and alleges by reference paragraphs 1-14 above as and for paragraph 15 of this Count as if set forth fully herein.

16.　　A determination of the propriety of the sums due and owing must be determined from a review of the books and records of Defendant.

17.　　Plaintiff has requested an accounting and Defendant has refused.

18.　　Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff prays this Honorable Court order that an accounting be taken for purposes of establishing the accuracy of the amounts due Plaintiff as a result of the wrongful actions of Defendant.

Respectfully submitted,

Tracy E. Stevenson, One of the Attorneys for Plaintiff

BI1971
06/06/08

8

## SUPREME COURT RULE 222 CERTIFICATION

Tracy E. Stevenson, does hereby depose, certify, and state as follows:

1.    I am one of the attorneys for the Plaintiff in the instant case.

2.    I have conducted a reasonable investigation and assessment of the damages, and this certification is based upon that investigation.

3.    The total of money damages sought in the above-entitled action does exceed $50,000.

4.    If called upon to testify, I would and could competently do so as to the matters set forth herein.

Under penalties of perjury as provided by law pursuant to 735 ILCS 5/1-109, the undersigned certifies that the statements set forth in this Certification are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that she verily believes the same to be true.

Dated: _____

_____
TRACY E. STEVENSON

Tracy E. Stevenson
Robbins, Salomon & Patt, Ltd.
Attorneys for Plaintiff
25 East Washington Street, Suite 1000
Chicago, IL  60602
312-782-9000
#80919

BI1971
05/29/08

7

## EMPLOYMENT AGREEMENT

This Agreement, dated and effective this 3rd day of October, 2005, is hereby entered into between National Asset Recovery Services, Inc. ("NARS") and James Plonsker ("Plonsker"). NARS and **Plonsker** hereby agree as follows:

1.  **Term of Employment.** **Plonsker** is being employed in the position of Vice President, Sales. Effective Date of employment is October 10, 2005. Nothing in this Agreement shall change the at-will status of **Plonsker**'s employment. Accordingly, **Plonsker**'s employment may be terminated at any time, with or without cause, by either the Company or **Plonsker**.

    **Compensation.** For his services to be performed hereunder, NARS shall pay **Plonsker**'s base salary of $100,000, payable in installments not less frequently than twice per month, less deductions and withholdings as required by law. NARS will pay to **Plonsker** a $25,000.00 draw against Commissions in **Plonsker**'s first year of employment, to be paid out in monthly installments for twelve (12) months.

    **Commissions.** **Plonsker** shall receive the following commission for his sales efforts:

    (a) Four percent (4%) of all revenue produced in the first year of each contract for contracts signed during the six months of his employment with NARS and for any proposals issued to potential clients during the first six months of employment that become signed contracts at any time during **Plonsker's** first year of employment.

    (b) Two percent (2%) of all revenue produced during the second year of each contract signed during the initial six month term of employment with NARS and for any proposals issued to potential clients during the first six months of employment that become signed contracts at any time during **Plonsker's** first year of employment.

    (c) One percent (1%) of all revenue produced during the third year of each contract signed during the initial six month term of employment with NARS and for any proposals issued to potential clients during the first six months of employment that become signed contracts at any time during **Plonsker's** first year of employment.

    (d) To qualify for this consideration, both **Plonsker** and NARS must certify the legitimacy of all proposals issued during the first six months of his employment.

    (e) After the initial six months of employment, **Plonkser's** commission plan will be consistent with the NARS sales commission plan currently under review.

2.  **Benefits.** During the term of this Agreement, **Plonsker** shall be entitled to the following benefits:



PLAINTIFF'S
EXHIBIT

_A_

(a) <u>Vacation:</u> **Plonsker** will earn two (2) weeks vacation per 12-month period until two years of employment. After two years of employment **Plonsker** will earn three (3) weeks of vacation per 12-month period.

(b) <u>401k:</u> **Plonsker** will be eligible to participate in NARS 401k plan after 12 months of employment.

(c) <u>Other Benefits:</u> **Plonsker** will receive other Health and general employee benefits as described in the NARS' employee manual.

5.   <u>Relocation.</u>   Relocation is not a requirement of this position.

6.   <u>Drug Testing.</u> **Plonsker** shall be required to undergo random drug testing. Failure to cooperate in any required drug test or a positive result shall be grounds for the termination of this Agreement, further any finding of drug-use other than prescribed by a physician, possession, sale, control, attempt to sell or any other use of drugs other than prescribed by a physician shall be grounds for termination.

7.   <u>Indemnification and Hold Harmless.</u> **Plonsker** declares that any non-compete agreements that **Plonsker** may have signed with other companies, do not prohibit his ability to provide services under this Agreement. This Agreement shall terminate immediately, if it is determined by NARS or any judicial body, that any non-compete agreement signed by **Plonsker** prohibits him from performing services under this Agreement. In addition, **Plonsker** agrees to indemnify and hold harmless NARS, its officers, directors, shareholders, employees and other representatives ("Indemnified Parties") from all losses, claims, damages, liabilities, penalties, costs, and attorneys fees incurred by an Indemnified Party resulting from reliance on **Plonsker's** declaration that any non-compete agreement signed by **Plonsker** is unenforceable for the work performed under this Agreement.

8.   <u>Non Solicitation of Employees.</u> **Plonsker** agree that while he is employed by NARS and for a period of one (1) years after termination of his employment for any reason, with or without cause, he will not directly or indirectly hire, or attempt to hire, any employee of NARS nor will he encourage any employee of NARS to terminate employment with NARS.

9.   <u>Protection of NARS' Confidential Information.</u> **Plonsker** shall keep confidential, use solely for his duties hereunder and not, directly or indirectly, disclose at any time during or for a period of one (1) year following the termination of his employment, any confidential or proprietary information about the business and affairs of NARS without the express written permission of NARS. Confidential or proprietary information is deemed to be methods of operation unique to NARS, customers and customer lists unique to NARS, prices and details of contracts with customers, consultants, suppliers or employees, business management methods,

marketing plans, forecasts, or other specialized information relating to the business of NARS and which is unique to NARS and not commonly known in the industry.

10.   Nonsolicitation.   For a period of one (1) year following termination of his employment, **Plonsker** agrees not to solicit, directly or indirectly, the business of any NARS client that was an established NARS client as of the date **Plonsker** commenced his employment or that was acquired as a client during the period of **Plonsker**'s employment.   To this end, **Plonsker**'s covenants and affirmatively represents that should his employment with NARS end for any reason; he will not remove, retain, or otherwise possess, actually or constructively, any NARS customer list or customer information of any kind.

11.   Specific Enforcement.  **Plonsker** agrees that any breach of Paragraphs 6 through 9 hereof will cause NARS irreparable harm for which NARS will have no adequate remedy at law.  Accordingly, **Plonsker** agrees that NARS may, in addition to any other remedies available in law or equity, have specific performance of the terms contained in Paragraphs 8 through 11 of this Agreement in any court having jurisdiction.

12.   Severability.  If any provision of this Agreement is held invalid, such invalidity shall not affect the other provisions of this Agreement which shall be given effect independently of the invalid provisions; and, in such circumstances, the invalid provision is severable.

13.   Governing Law.  This Agreement shall be construed in accordance with the laws of the State of Missouri.

14.   Successors and Assigns.   The rights and obligations of NARS under this Agreement shall inure to the benefit of its successors and assigns.   This Agreement, being personal to **Plonsker**, cannot be assigned by **Plonsker**, but his personal representative shall be bound by all its terms and conditions.

15.   Amendments, Etc.  No modifications, amendments, extensions, or waivers of this Agreement or any provisions hereof shall be binding upon NARS or **Plonsker** unless in writing and signed by NARS' President.

16.   Complete Agreement.  This Agreement shall constitute the entire agreement and understandings between NARS and **Plonsker** and shall supersede and replace all prior and contemporaneous agreements and understandings, written and oral. This should not be mistaken for a contract of employment for a specific duration of time. **Plonsker**'s employment is at-will and terminable by either **Plonsker** or NARS at any time.

IN WITNESS WHEREOF, the parties have signed this Agreement effective as of the day and year first above written.

NATIONAL ASSET RECOVERY
SERVICES, INC.

Signature: _____

Date: _____10/12/2005_____

By:  James E. Quinn_____

Signature: _____

Date: _____

175111 1